SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
Donald G. Rez, SBN 82615
550 West "C" Street, Suite 1500
San Diego, California 92101
Telephone:   (619) 233-4100
Facsimile:    (619) 231-4372

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & MARTIN
William S. Helfand
Ryan O. Cantrell
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone:   (713) 658-2536
Facsimile:    (713) 658-2553

Attorneys for Defendant City of Galveston

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOX, <br><br> Plaintiff, <br><br> v. <br><br> GALVESTON POLICE DEPARTMENT, "GALVESTON POLICE OFFICER S. BREWER ID #378-OR-398 ANY AND ALL OTHER POLICE OFFICERS AND DETECTIVES, AND OTHER EMPLOYEES OF THE GALVESTON POLICE FORCE CURRENTLY NOT KNOWN" <br><br> Defendants. | Case No. 07CV2388 DMS (POR) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> Date:   July 18, 2008 <br> Time:   1:30 p.m. <br> Ctrm:   10 (2nd Floor) <br><br> Judge:   Hon. Dana M. Sabraw <br> Complaint Filed: December 20, 2007 |

Defendant, City of Galveston Police Department (the "Department") files this Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and would respectfully show this Court as follows:

## FACTUAL BACKGROUND

1. Plaintiff, *pro se*, Michael Fox, accuses the Department of conspiring with various identified and unidentified parties to stage a three-car collision involving Plaintiff's motor vehicle. The opening line of Plaintiff's Complaint states: "Now comes the Plaintiff Michael Fox to this Honorable Court seeking justice of this foregoing complaint in regards to a staged car accident in which the civil rights of the Plaintiff have been relentlessly violated under deprivation of civil rights under color of the law." Importantly, this alleged "staged car" incident, which occurred almost two-and-a-half years ago in Galveston, Texas, represents the totality of the basis of Plaintiff's claims against the Department.

2. Specifically, Plaintiff makes the following allegations regarding the car accident:

> That while driving to Galviston [sic] Texas on Feb. 3 2006. [sic] The Plaintiff was being followed by a Mexican man driving a black Chevy Camario [sic] with United States Department of Defense stickers on the windshild. [sic] Man driving is hispanic. Other vehicles with U.S. Department of Defense where [sic] also tracking the Plaintiff Michael Fox at this [sic] same time.
>
> That Michael Fox arrived in Galviston [sic] Texas in the early evening hours of February 3, 2006.
>
> ...
>
> That Michael Fox parked heading east on the shoulder of the road of Seawall Blvd. in Galviston [sic] Texas.
>
> ...
>
> That at approx midnight or a little after midnight on Feb 4 2006 [sic] a woman known as Paula Patson from Houston Texas. [sic] driving at a high rate of speed heading east on Seawall Blvd. hit the parked Ford Explorer on Seawall Blvd. which was parked behind the Plaintiff Michael Foxes [sic] mini van.
>
> That this Ford Explorer was driven forward from the impact from Paula Patson the Defendant hitting the drivers [sic] side of the rear end of this Ford Explorer. [sic] causing this Ford Explorer to leap forward, [sic] and also causing the Ford Explorer to vear [sic] off the right [sic] due to impact [sic] of the force on the left side of the rear of its Ford Explorer.

1 | 2 | 3

> That this Ford Explorer was driven over 8 to 9 feet forward into the back of the Plaintiff mini vann [sic] where the Plaintiff was sleeping on the drivers [sic] side in the back of the Plaintiffs [sic] van on the floor in a bed that the Plaintiff had. [sic] Since leaving Florida on Oct 22 2004 [sic].

*See* Plaintiff's Complaint, ¶¶ 25-39.

3. Plaintiff's Complaint next accuses the Galveston Police Department and all of the officers of the Galveston Police Department of staging the accident on February 4, 2006. Based solely on Plaintiff's apparently paranoid and delusional understanding of the accident and the subsequent investigation thereof, Plaintiff accuses the Department of attempting to execute a "full fledge [sic] government hit" and attempting to track Plaintiff "through there [sic] GPS tracking devices." Plaintiff's Complaint ¶ 55. Specifically, Plaintiff alleges that "the Galviston [sic] Police where [sic] pre-informed of Michael Fox entering there [sic] city. [sic] and was [sic] in fact part of this staged car accident inflicted upon Michael Fox the Plaintiff. And it was evident by there [sic] actions during this incident of there [sic] intentions. [sic] and knowledge." *See* Plaintiff's Complaint ¶ 58a.

4. The remainder of Plaintiff's Complaint details Plaintiff's alleged difficulties incurred in obtaining insurance settlement and recounts various purported medical complications caused by the accident. Importantly, however, nowhere within Plaintiff's lengthy, rambling narrative does Plaintiff ever claim that any of the above-mentioned events occurred anywhere within the State of California or that any Defendant is otherwise subject to personal jurisdiction within this state. Indeed, Plaintiff admits that the supposedly staged vehicular accident occurred in the City of Galveston, Texas. Nowhere within Plaintiff's Complaint does Plaintiff allege that either the City of Galveston Police Department or the officers and employees of the City of Galveston Police Department have ever engaged in any activities in California whatsoever, or even set foot in the state for that matter.

5. Plaintiff's Complaint includes only a handful of fleeting, unrelated references to events or persons within the Southern District of California, none of which even remotely involve any Defendant. First, Plaintiff happens to currently reside in San Diego, California, which may do more to explain why Plaintiff filed in this Court than any other allegation in Plaintiff's lengthy

1 | Complaint. Plaintiff does not mention California again until paragraph 112 wherein Plaintiff alleges that he "found a doctor in San Diego, California" seeking "another evaluation of his medical condition." This allegation makes no mention of any Defendant or any action by any Defendant. Plaintiff next refers to California at paragraph 120, where Plaintiff alleges that, after being approached by a senior adjuster from AMICA Insurance, Plaintiff returned to San Diego, California. Plaintiff next refers to southern California at paragraph 125, where Plaintiff alleges that he was contacted by James Zerba of AMICA Insurance from southern Los Angeles County in California. Yet again, Plaintiff's allegation in no way relates to any Defendants' relationship to this forum. Finally, Plaintiff alleges he rented a car from Thrifty Rental on Century Boulevard in Los Angeles, California. Plaintiff's Complaint ¶ 128(a).[1] As with the remainder of Plaintiff's Complaint, this allegation in no way demonstrates any of the Defendant's ties to this forum.

6.    As discussed in greater detail below, nothing contained in Plaintiff's Complaint subjects Defendant to personal jurisdiction in the state of California. Moreover, the pending lawsuit is a mere carbon copy of a lawsuit filed against the same Defendants in a County Court of Law in Galveston, Texas. *See Fox v. Galveston Police Dept. et. al*, Cause No. 08-CV-0100, attached as Exhibit A.[2]

---

[1] Of course, Los Angeles is not in the Southern District of California.

[2] The Court may take judicial notice of this proceeding and is request to do so. Federal Rules of Evidence, Rule 201, *Hayes v. Woodford*, 444 F. Supp. 1127, 1137 (S.D. Cal. 2006) (federal courts may take judicial notice of other court's proceedings and may consider them for purposes of a motion to dismiss). "Additionally, federal courts may take judicial notice of other courts' proceedings, within the federal judiciary and without, if the proceedings directly relate to matters before the court. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). A court may "'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988)." *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1137 (S.D. Cal. 2006)

When parallel litigations have been commenced in separate courts, the "first to file" rule allows a district court to dismiss, transfer or stay a matter on the grounds that the second suit is a duplicate suit. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). This rule may be invoked "when a complaint involving the same parties and issues" has already been filed in another court. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action."). The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and to prevent vexatious litigation and multiplicity of suits. *Childs v. Eltinge*, 29 Cal. App. 3d 843, 849 (1973).

7. Because subjecting Defendant to suit in the Southern District of California would violate traditional notions of due process, this Court lacks personal jurisdiction over the City of Galveston Police Department and this Court should therefore dismiss Plaintiff's Complaint against the Department for lack of personal jurisdiction.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

8. Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of an action for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993) (citation omitted). In the present case, "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* at 1484 (citation omitted). Thus, only constitutional principles constrain the jurisdiction of a federal court in California. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Stated differently, "[d]ue process requires that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotations omitted).

9. Accordingly, to satisfy this due process requirement, a plaintiff must overcome two hurdles to justify the exercise of personal jurisdiction over these nonresident defendants. First, the plaintiff must show that each nonresident defendant has purposefully established "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); and *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 105, 107 S. Ct. 1026, 1028 (1987). Second, the plaintiff must show that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158.

10. The United States Supreme Court has extensively developed the first prong of the test; the minimum contacts analysis. An essential goal of the minimum contacts test is to protect a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980). This goal requires a determination whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 2183 (1985). This "purposeful availment" requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475, 105 S. Ct. at 2183: *see also, Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984); and *World-Wide Volkswagen*, 444 U.S. at 298, 100 S. Ct. at 567. Furthermore, nonresident defendants must have fair warning that a particular activity in which they purposefully engage may subject them to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2181-82.

11. Several well-established decisions by the Supreme Court have refined the minimum contacts analysis further by categorizing such contacts as conferring either specific or general jurisdiction. When specific jurisdiction is asserted, the cause of action must arise out of, or relate to, the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *See Helicopteros*, 466 U.S. at 414 n. 8, 104 S. Ct. at 1872 n.8; and *World-Wide Volkswagen*, 444 U.S. at 293-94, 100 S. Ct. at 565-66. *Accord Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

12. Within the Ninth Circuit, district courts determine the existence or absence of specific jurisdiction in accordance with a three-part test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007).

13. The first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum, by purposeful direction of activities at the forum or by some combination thereof." *Id.* Under the second prong, the plaintiff's claim must arise out of or relate to the defendant's forum-related conduct. The Ninth Circuit follows the "but-for" test, under which the plaintiff must "show that he would not have suffered an injury but for [the defendant's] forum-related conduct." *Id.* at 1058. Under the third prong, the court analyzes whether the exercise of jurisdiction would be reasonable. In considering this prong, the Ninth Circuit requires consideration of seven factors:

(1) the extent of the defendants' purposeful interjection in the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Menken,* 503. F.3d at 1058.

14. Even if specific jurisdiction does not exist, exercising personal jurisdiction over a nonresident defendant may be appropriate where general jurisdiction exists. General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, but there are *continuous and systematic contacts* between a nonresident defendant and the forum state. *Helicopteros,* 466 U.S. at 414-16, 104 S. Ct. at 1872-73. As described by the Ninth Circuit Court of Appeals, "[g]eneral jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting

1 *Helicopteros*, 466 U.S. at 414-16). When a defendant does not reside in the forum state, the contacts must be such that they "approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Bancroft v. Masters*, 223 F.3d 1082, 1086 (9th Cir. 2000)). Importantly, "[t]his is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)).

15. Finally, once a district court determines that a nonresident defendant purposefully established minimum contacts with the forum state, these contacts must be evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice." *Asahi*, 480 U.S. at 113-15, 107 S. Ct. at 1032-34; *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184. These factors include (1) the burden on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292, 100 S. Ct. at 564; *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184; *Asahi*, 480 U.S. at 113, 107 S. Ct. at 1032-33.

**II.    This Court Lacks Personal Jurisdiction over Defendants, because Defendants have No Contacts with the Forum State, Much Less Sufficient Minimum Contacts.**

   *A.   No Specific Jurisdiction Exists Because Plaintiff's Cause of Action Arises out of an Incident that Allegedly Occurred in Galveston, Texas.*

16. This Court lacks specific personal jurisdiction over Defendants, because the car accident that forms the basis of Plaintiff's suit, occurred in Galveston, Texas, not the Southern District of California.

17. Analyzing Plaintiff's claims within the context of the three-part specific jurisdiction test established by the Ninth Circuit, this Court clearly lacks specific personal jurisdiction over Plaintiff's claims against Defendant. First, Plaintiff's Complaint does not allege that either the Galveston Police Department or its employees purposefully directed any activities or consummated

any transactions within the Southern District of California. Indeed, the only references at all to the Southern District of California in Plaintiff's Complaint occur in random places scattered throughout the Complaint unrelated to these Defendants.

18. These transitory references to various individuals and businesses in the Southern District of California, none of whom are parties to this suit, are wholly insufficient to demonstrate that either the Department or its employees purposefully directed their activities within the Southern District forum or otherwise availed themselves of this forum. Accordingly, subjecting this Defendant to suit in the Southern District of California on the basis of Plaintiff's random interactions with a handful of unrelated people in the Southern District of California would unquestionably offend traditional notions of due process.

19. Considering the second prong of the Ninth Circuit's specific jurisdiction analysis, it is clear Plaintiff has wholly failed to even allege that his claim is one which arises out of, or relates to, the Defendant's forum-related activities and Plaintiff's allegations demonstrate to the contrary. As a threshold matter, Plaintiff does not allege that Defendant had any contact whatsoever with the Southern District of California, nor could he as the Department is a governmental entity located in Texas with no business outside the state. Moreover, Plaintiff's Complaint admits unequivocally that the vehicle accident forming the basis of Plaintiff's lawsuit occurred in Galveston, Texas, where Plaintiff has an identical action pending in state court against the same Defendants. Accordingly, Plaintiff fails to allege that his claim against Defendants arose out of Defendant's forum-related activities, and this Court therefore lacks specific jurisdiction under the second prong of the Ninth Circuit's analysis.

20. Finally, considering the third prong of the test, it would be clearly unreasonable to force Defendant to defend itself against Plaintiff's duplicative, but equally frivolous, lawsuit in the Southern District of California, where Defendant has no contacts whatsoever with the forum state. However, for the sake of completeness, Defendant will address the seven (7) factors utilized by the Ninth Circuit in determining reasonableness under the third prong of the specific jurisdiction analysis.

21.     First, the Plaintiff has not alleged that Defendant has purposefully interjected themselves in the forum state's affairs, nor has Defendant, in fact, submitted in any way to the Southern District forum. Second, uprooting a governmental entity in Texas and its employees and forcing these parties to defend themselves in San Diego, California for actions that occurred in Galveston, Texas imposes an unconstitutional burden on these Defendants. Third, as a governmental entity and as employees of that governmental entity within the state of Texas, the state of Texas has a significant interest in the outcome of any litigation involving its governmental entities and a superior right to host any litigation involving that entity and its employees. Fourth, as all of the witnesses and parties, save perhaps Plaintiff, reside in the state of Texas, it is more efficient to allow a Texas forum to resolve this dispute. Fifth, Plaintiff apparently filed suit in California in the hopes of harassing Defendants and in the incorrect belief that litigants in California frequently receive multi million dollar settlements for similar such claims. *See* Plaintiff's Complaint ¶ 101c. Clearly, Plaintiff has no legitimate interest in resolving this dispute in the California forum. Finally, even Plaintiff acknowledges that an alternative (more convenient) forum exists, as Plaintiff has already filed an identical suit involving identical parties and claims in Galveston, Texas. Ex. A.

22.     In sum, Defendants have in no way availed themselves of the California forum. Even applying the seven-factor reasonableness test employed by the Ninth Circuit, forcing Defendants to defend themselves in this forum is per se unreasonable.

   B.     *Defendants Have No Contacts with the Forum State, Much Less Continuous and Systematic Contacts Sufficient to Convey General Jurisdiction Upon this Court.*

23.     Plaintiff's Complaint contains only a handful of fleeting references to individuals and places within the Southern District of California.[3] Importantly, as discussed previously, not a single one of these references implicates either the Galveston Police Department or its employees. These references refer solely to Plaintiff's own contacts with California (not necessarily the Southern

---

[3] Indeed several of the references are to Los Angeles, which is not in the Southern District of California.

District) but have nothing to do with Defendant's contacts. Plaintiff's allegations are utterly deficient in this regard and cannot, as a matter of law, confer general jurisdiction upon this Court.

**III.   Even if Specific or General Jurisdiction Exists, which it does not, Forcing Defendants to Defend Themselves in this Forum Offends Traditional Notions of Fair Play and Substantial Justice.**

24. As a threshold matter, forcing the Department and its employees to litigate this matter in the Southern District of California would cause Defendant to incur significant, unnecessary expense, and waste an inordinate amount of time and resources. All of the witnesses, documents, and parties (save, perhaps, Plaintiff) are located in Texas. Transporting all of these persons to California for proceedings would add immeasurable, unnecessary expense. Second, Texas unquestionably has a vested interest in the adjudication of this dispute as it involves a governmental entity within the state of Texas and its employees. Third, to the extent Plaintiff has any interest in obtaining convenient and effective relief,[4] Plaintiff has the same opportunity to obtain such relief in the pending Texas litigation. Finally, dismissing Plaintiff's Complaint for want of personal jurisdiction preserves important constitutional principles of due process and protects innocent, non resident defendants, such as the Department and its employees, from unexpected, harassing litigation in foreign forums.

25. Even if this Court found the existence of general or specific jurisdiction, haling Defendants into this forum would violate traditional notions of fair play and substantial justice.

///
///
///
///
///

---

[4] Plaintiff's motives in filing this suit in California appear to be far from honorable. Plaintiff apparently hopes that California courts award large judgments to plaintiffs (para. 101c). Retaliation and harassment also figured largely in Plaintiff's decision to file this lawsuit (paras. 101d, e).

## CONCLUSION

Because the Department does not have any contacts with the forum State, much less sufficient, minimum contacts to confer either specific or general jurisdiction, this Court must dismiss Plaintiff's claims against Defendants for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. To do otherwise would violate Defendant's due process rights.

Dated:   June 16, 2008

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & MARTIN

AND

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation


By:   /s/ Donald G. Rez
      Donald G. Rez
      Attorneys for Defendant
      City of Galveston